UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANEEN FELDMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 07 C 2694 |
| | ) | |
| TRANE, a subsidiary of AMERICAN STANDARD, CO., and AMERICAN STANDARD, CO., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendants Trane and Trane U.S. Inc. for summary judgment in their favor on the complaint of Plaintiff Janeen Feldman. For the reasons set forth below, the motion is granted.

**BACKGROUND**

The factual recitation contained herein is derived from pertinent portions of Trane's Rule 56.1 statement of material fact. Because Feldman did not respond to the 56.1 statement, properly supported facts within it are deemed admitted by operation of the rule. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).

Defendant Trane U.S. Inc., formerly known as American Standard Inc., is the parent company of Defendant Trane.

In August 1995, Trane hired Feldman to serve as a part-time human resources representative to assist employees at Trane's Chicago district office. An essential part of Feldman's job was to communicate and administer Trane's insurance and benefit programs. This included handling benefits questions from employees and assisting them in completing forms and paperwork.

Around August 2003, Trane announced that same-sex domestic partners would soon be able to be covered under its Long-Term Care Insurance program. In response to the announcement, Feldman raised questions and objections to the policy in two email messages. One of the messages was directed to Carl Becker, Trane's corporate benefits manager. In the email, Feldman requested that the company reconsider its decision to extend benefits to same-sex domestic partners and stated that she "sincerely ask[ed] that our plans and our company maintain criteria only for married couples."

Near the beginning of October, Feldman wrote to Trane's CEO. In pertinent part, the letter stated:

> The change to cover same sex partners in benefits is a significant detriment to our company and our ethics. In addition, it is contrary to my religious beliefs...I speak out against allowing benefits for same sex unions. I do not believe that having sex outside of marriage should be a criteria for allowing benefits....This change is directly against my religious beliefs as it promotes homosexuality...[S]ince I am in Human Resources, this change directly impacts

my job...Please work quickly to change the benefits enrollment eligibility for 2004.

A few days later, Becker sent an email to all human resources representatives regarding the change in coverage. Attached to the email was several talking points in a question-and-answer format to assist them in providing consistent responses to questions that were anticipated to arise from employees interested in taking advantage of the new benefit coverage. At its close, the email provided that: "[i]f employees have concerns about this coverage...that you are not comfortable addressing, please ask them to send an e-mail to the Corporate Benefits team" and provided an email address for that purpose.

After receiving Becker's email, Feldman replied, stating:

I want to be open and respectfully inform you that because of my religious beliefs, I will not be able to communicate the information enclosed in this e-mail. I am a Christian and the bible speaks directly against a number of things, one of them being homosexuality... As I understand my religion, I should communicate that those who commit a sin can receive a benefit. My religion teaches if I cause a person to sin, I am also at fault. By communicating I would be an accessory to the wrong.

Because of Feldman's refusal to communicate information to employees who could qualify for available benefits, her employment as a human resources representative was terminated a few days after she sent the above-referenced email.

Feldman pursued a charge of religious discrimination and failure-to-accommodate before the Illinois Department of Human Rights. That proceeding

concluded in Trane's favor in August 2006.[1] On May 11, 2007, Feldman filed the instant suit, alleging discrimination and failure to accommodate by Trane in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and asserting vicarious liability against Trane U.S. Inc. for the actions of its subsidiary. At the completion of discovery, Defendants moved for summary judgment in their favor. Despite having the opportunity to do so, Feldman has not responded to the motion in any way.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. Proc. 56(e); *Celotex Corp. v.*

---

[1]There is no indication in the filings before this court that Feldman also brought charges before the EEOC, but since Trane has not raised that issue we will not address it further.

*Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

With these principles in mind, we turn to Trane's motions.

## DISCUSSION

Feldman's complaint contains claims for religious discrimination and for failure to accommodate her religious beliefs. Though these two claims are factually related, they are analytically distinct. *See Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997). We examine each in turn.

**A. Religious Discrimination Claim**

To establish that her discharge was unlawfully discriminatory, Feldman must demonstrate that Trane's decision was the result of animus toward her religious beliefs. *See id.* She may do so using either the direct method of proof or the indirect burden-shifting method. *See Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). As Trane points out, Feldman has not offered any direct evidence of discrimination or circumstantial evidence that would suffice to make out a claim under the direct method. In fact, the preemptive offering of an alternative avenue whereby employees could redirect requests about same-sex benefits that they were uncomfortable addressing

indicates that Trane recognized and did not harbor animus toward the religious beliefs of its employees.

To survive summary judgment using the indirect method, Feldman must show that she was subjected to an adverse employment action, that her job performance was satisfactory at the time the action was taken, and some evidence to support an inference that the adverse action was taken because she did not hold or follow the religious beliefs of her superiors at Trane. *See Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1169-70 (7th Cir. 1998). If she is successful at setting forth this prima facie case, the burden shifts to Trane to set out a legitimate business reason for the actions it took toward Feldman. *See Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005). Feldman must then show that the proffered reason is not worthy of credence or by convincing the court that the more likely basis for the action was unlawful discrimination. *See id*.

Trane does not take issue with Feldman's ability to show the first two aspects of her prima facie case. Instead, it attacks the viability of Feldman's prima facie case on the ground that she has not identified a similarly situated employee who did not hold her religious beliefs who was treated more favorably than she was. In light of Feldman's failure to respond to the instant motion, the problem with her prima facie case is even more fundamental; she has offered no evidence at all to support an inference that Trane's actions were taken because she did not hold or follow the

religious beliefs of those above her at the company. As a result, there is no presumption created that Trane engaged in unlawful discrimination by firing her.

Even if that were not the case, Trane has set forth a legitimate business reason for its action: Feldman's refusal to communicate benefit information to employees who sought it and to assist them in obtaining benefits available to them. In her deposition, Feldman acknowledged that this task that an essential part of her job. Title VII does not bar an employer from firing an employee who refuses to do the work they were hired to do, and Feldman has offered nothing to indicate that this reason is pretextual.

Accordingly, Trane is entitled to summary judgment in its favor on the claim of religious discrimination in violation of Title VII.

**B. Failure to Accommodate Claim**

A claim of failure to accommodate religious beliefs begins with a three-element prima facie showing by the employee of a religious observance or practice that conflicts with an employment requirement, a communication of the need to engage in the observance or practice to the employer by the employee, an adverse employment action because of the observance or practice. *See EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997). If the employee can show these three things, the burden shifts to the employer to show either that a reasonable accommodation of the religious practice was offered to the employee or that any accommodation of the plaintiff's observance or practice would result in undue hardship. *See id.*

In this case, there can be no doubt that Trane provided Feldman with a reasonable accommodation in the form of the alternative means for employees to gain benefit information by contacting the Corporate Benefits team rather than obtaining it directly from a human resources representative like Feldman. Feldman admitted in her deposition that this alternative would not have compromised her religious beliefs, and thus it removed the conflict between them and her employment requirement of communicating benefit information and assisting employees in obtaining benefits to which they were entitled. Consequently, Feldman has not shown that Trane engaged in behavior contrary to its legal obligations under Title VII, and summary judgment in its favor on her failure to accommodate claim is therefore warranted.

## C. Respondeat Superior Claims

Since the vicarious liability of Trane U.S. Inc. is predicated on the liability of its subsidiary, Trane, the entry of summary judgment on the counts against Trane mandates a like outcome for the respondeat superior claims against Trane U.S. Inc.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for summary judgment is granted.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated:   September 17, 2008